# UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                                (973) 645-4693
  BANKRUPTCY JUDGE                                              Fax: (973) 645-2606

## NOT FOR PUBLICATION

**FILED**

JAMES J. WALDRON, CLERK

**NOV. 28, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

November 28, 2012

## LETTER OPINION
## ORIGINAL FILED WITH THE CLERK OF THE COURT

Stacey L. Meisel, Esq.
N. Noelle Letcher, Esq.
Becker Meisel LLC
Eisenhower Plaza II
354 Eisenhower Parkway, Suite 1500
Livingston, New Jersey 07039
*Counsel for Stacey L. Meisel, Chapter 7 Trustee*

Jennifer Ann McLaughlin, Esq.
Cullen and Dykman, LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
*Counsel for New York Commercial Bank*

Stephen Chalk
c/o Pilgrim Group, LLC
1 Chase Road, Suite 204
Scarsdale, New York 10583
*Pro Se Defendant*

Re:    **New York Commercial Bank, et al. v. Palmyra Power & Light, LLC, et al.**
       **(In re Central Leasing Co. of NJ, LLC)**
       **Adv. Pro.:  11-01175 (DHS) (Lead Case: 11-11917 (DHS))**

Page 2
November 28, 2012


Dear Counsel:

      For determination by the Court is the enforceability of a settlement ("Settlement") between defendant Stephen Chalk ("Chalk") and the Chapter 7 Trustee ("Trustee"). The Settlement requires the payment of $1.8 million in settlement of the underlying adversary proceeding.

      The Trustee argues that she entered into an agreement based on the terms of the Settlement which she seeks to enforce. Chalk counters that at no point did the parties become bound by the Settlement because no final agreement was executed. The Trustee argues that, while a memorialization of the terms of the Settlement was not signed, Chalk is bound as a result of his approval and subsequent conduct related to the final terms of the Settlement.

      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTS AND PROCEDURAL HISTORY

      The debtor, Central Leasing Co. of NJ, LLC ("Debtor"), filed a petition for relief under chapter 7 of the Bankruptcy Code. (Certification of Stacey L. Meisel in Support of Motion ("Trustee's Cert."), ¶ 1) ("Trustee's Certification") Stacey Meisel was appointed Trustee. (Trustee's Cert., ¶ 1) In February of 2011, an adversary proceeding was instituted by the Trustee against several defendants including Allan Brenner ("Brenner") and Chalk. (Trustee's Cert., ¶ 3) In May of 2011, the Trustee engaged the Debtor's lending institutions in settlement negotiations and informed Brenner's counsel, Paul Robbins, Esq. ("Robbins"), and Morris Bauer, Esq. (jointly "Brenner's Counsel") of the same. (Trustee's Cert., ¶ 12) In or about June of 2011, the Trustee met with Brenner's Counsel and Chalk. (Trustee's Cert., ¶ 19) During this meeting, the prospect of entering into a Settlement of the adversary proceeding was introduced by Brenner's Counsel on behalf of Brenner and Chalk, it being the understanding of the parties that Brenner's Counsel would have the authority to negotiate on Chalk's behalf. (Trustee's Cert., ¶ 20) Chalk does not dispute Brenner's Counsel's authority to negotiate on his behalf.

      Settlement negotiations continued among the parties for the next several months. The Trustee made the first settlement demand of $4.2 million to Brenner's Counsel and Chalk through Brenner's Counsel. (Trustee's Cert., ¶ 21) After discussing the Trustee's initial demand, Brenner's Counsel and Chalk discussed a counterproposal, which was drafted by Brenner's Counsel and approved by Chalk via e-mail. (Trustee's Cert., ¶¶ 23–25; *see Id.* Ex. F) On June 20, 2011, the approved counterproposal was communicated via e-mail to the Trustee,

Page 3
November 28, 2012

with a copy sent to Chalk which was not objected to by Chalk.  (Trustee's Cert., ¶ 30; *see Id.* Ex. G)

On July 14, 2011, in response to a counterproposal by the Trustee, Brenner's Counsel sent a proposal of $3.6 million to Chalk and Brenner for approval and then to the Trustee. (Trustee's Cert., ¶¶ 29–30)  Furthermore, Brenner's Counsel requested an adjournment of an upcoming hearing to continue with settlement negotiations among the Trustee, Brenner, and Chalk, also without objection from Chalk.  (Trustee's Cert., ¶ 33)  On August 8, 2011, Brenner's Counsel sent an e-mail to Chalk confirming the final terms of the agreement as agreed to by Brenner's Counsel and the Trustee, including that Chalk would be obtaining security for a portion of the Settlement, to which Chalk responded "ok."  (Trustee's Cert., ¶¶ 33–34; *see Id.* at Ex. L)  Only one minute later, with a copy sent to Chalk via e-mail, Brenner's Counsel confirmed the terms of the Settlement with the Trustee, (Trustee's Cert., ¶ 35), and on September 16, 2011, Brenner's Counsel, again with a copy to Chalk, sent an e-mail to the Court requesting that the matter be marked settled.  (Trustee's Cert., ¶ 39; *see Id.* at Ex. O)

A draft of the final settlement agreement was circulated by Brenner's Counsel during the month of September.  On September 27, Chalk acknowledged receipt and review of the agreement and indicated that he would be having an attorney review the draft.  (Trustee's Cert., ¶ 41)  On November 1, at the request of the Trustee, instead of a bank guarantee, Chalk agreed to proceed with a letter of credit.  (Trustee's Cert., ¶¶ 44–48)  In response to a status request from the Court, Brenner's Counsel indicated that a settlement had been reached and then notified all parties of this communication via e-mail.  (Trustee's Cert., ¶ 50)  Specifically, the e-mail from Brenner's Counsel stated that he expressed to the Court that "we have a settlement," to which Chalk affirmatively responded, "ok."  (Trustee's Cert., ¶ 51; *Id.* at Ex. V)

Notwithstanding the lengthy negotiations and multiple communications throughout 2011, in January of 2012, Chalk became elusive.  Citing obstacles in obtaining the letter of credit, Chalk became the source of significant delay in the final stages of settlement.  (Trustee's Cert., ¶¶ 53–54)  By January 17, 2012, Chalk had effectively stopped communicating with the parties. To move forward, the Trustee equally divided the $3.6 million settlement between Brenner and Chalk and then proceeded to confirm the Settlement with this Court as to Brenner's portion.  The Court entered an Order approving the Settlement among the Trustee, Allan Brenner, Beth Brenner, and the lenders on May 1, 2012.  (Trustee's Cert., ¶¶ 58–59)  The Trustee now brings the instant motion to enforce the Settlement in the amount of $1.8 million against Chalk.

## DISCUSSION

The Trustee's position supporting enforcement of the Settlement against Chalk is that Chalk expressed an intent to be bound through his allowance of Brenner's Counsel to negotiate on his behalf, his acceptance of the terms of Settlement, and the lack of objection  or even comment to the terms of the Settlement at any time during the pendency of the case while

Page 4
November 28, 2012

Brenner, the Trustee, and the Court relied on the Settlement terms, his acceptance, and non-objection.  Chalk contends that he never agreed to the Settlement and emphasized during oral argument before the Court that he is unable to meet the terms of the Settlement due to hardships resulting from changes in his financial circumstances, not that he didn't agree with the Settlement when it was being negotiated.

The choice of law in determining whether there is an enforceable agreement "is governed by federal common law, which shall be determined primarily by reliance upon New Jersey contract law."  *United States v. Lightman*, 988 F. Supp. 448, 457 (D.N.J. 1997); *see generally Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) ("A settlement agreement between parties to a lawsuit is a contract.").  Under New Jersey law, "[w]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges."  *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993) (finding that a binding settlement agreement existed notwithstanding claims by the contesting party that the agreement was contingent on deciding other terms inasmuch as the essential terms were agreed to).  Furthermore, "parties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking."  *Comerata v. Chaumont, Inc.*, 52 N.J. Super. 299, 305 (App. Div. 1958).

The Trustee places significant weight on *Lightman* and argues that it is instructive in this matter.  In *Lightman*, the district court faced the issue of "whether a binding agreement-in-principal can be implied from the parties' course of conduct . . . ."  *Lightman*, 988 F. Supp. at 450.  The case involved a claim that was asserted by the government against, among other defendants, Stepan Company ("Stepan") relating to a superfund liability.  *Id.* at 450–451.  After Stepan disputed the recommendations of a mediator, the parties entered into negotiations.  *Id.* at 451.  The defendants and the government came to an agreement in principal and needed only to determine details regarding funding and allocation of contribution among the defendants.  *Id.* at 451.  During the course of the negotiations, a number of communications circulated among Stepan, the other defendants, the government, and the court including a representation that the parties were close to a final settlement.  *Id.* at 452.  The court then issued an order that the litigation would go forward without participation of the government.  *Id.*  At no time during any of those communications, or at any point when parties or the court relied on those communications, did Stepan object or indicate in any way that it did not consider itself bound by the agreement.  *Id.* at 454.  Finally, when Stepan advised a co-defendant that it would not be participating in the settlement, suit was instituted to enforce the agreement against Stepan.  *Id.* at 455.

This Court finds *Lightman* persuasive as it involved strikingly similar facts and arguments as those currently before the Court and resolved the issues relying on New Jersey contract law.  In *Lightman*, Stepan argued that the agreement was not enforceable because it had

Page 5
November 28, 2012

not signed the final agreement and, alternatively, because it relied on a funding agreement among the defendants yet to be signed and finalized. *Id.* at 455–456. The court placed significant weight on the fact that at no time during numerous communications and affirmations to the court regarding the settlement with the government did Stepan object to the agreement-in-principal with the government and found that, while the parties did not come to an agreement on funding among the defendants, it was clear that Stepan formed the intent to enter into the agreement-in-principal and, thus, was bound. *Id.* at 461.

In this case, Chalk is found to have agreed to the essential terms of the Settlement of $3.6 million, $1.8 million individually. It is clear and was established early in the course of the litigation that Brenner's Counsel would negotiate on behalf of Chalk. Chalk consented to such representation. Throughout those negotiations, Chalk, through Brenner's Counsel, was involved at all significant steps in the negotiations including approving proposals and counter-proposals made to the Trustee on his behalf. Chalk was fully aware of the final Settlement terms when he agreed to provide a standby letter of credit. Lastly, Chalk was copied on a number of communications, at least one of which was filed with the Court, representing that the matter was settled. The communications were not objected to nor were any issues raised by Chalk with the Court regarding the Settlement.

As a matter of policy, New Jersey courts encourage settlements. *Nolan*, 120 N.J. at 472 ("Settlement of litigation ranks high in our public policy."). As such, this Court seeks to give effect to those terms agreed upon by the parties as demonstrated by their conduct. Here, Chalk agreed to the Settlement that was brought before the Court, on notice to Chalk, for approval. It follows that the Settlement shall be enforceable to the extent of the terms agreed upon. The Trustee's motion is granted.

<u>**CONCLUSION**</u>

For the reasons stated, the motion of the Trustee seeking enforcement of the Settlement as to Chalk is granted. The Court finds that Chalk agreed to the essential terms of the Settlement as it applies to him and, thus, is subject to its enforcement.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

Very truly yours,

*Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure